UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CIVIL ACTION NO:
_____

_____ )
PAUL TORTORICE,                            )
                                           )                    **JURY TRIAL**
                                           )                    **DEMANDED**
                    Plaintiff              )
                                           )
          v.                               )
                                           )
                                           )
WELSBACH ELECTRIC CORP.;                   )
TIMOTHY MILLER; AND                        )
EMCOR GROUP, INC.                          )
                                           )
                                           )
                    Defendants             )
_____ )


## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The plaintiff, Paul Tortorice ("Mr. Tortorice" or "Plaintiff"), is a male resident of the State of New York residing at 15 Bonnie Lane, Massapequa, NY.

2.      Defendant Welsbach Electric Corp ("Welsbach") is a foreign corporation doing business in the state of New York. The Company's principal office is located at 111-01 14th Avenue, College Point, Queens, NY 11758.

3.      Defendant EMCOR Group, Inc. ("EMCOR") is a foreign corporation doing business in the state of New York. The Company's principal office is located at 301 Merritt Seven, Norwalk, CT 06851.

4.     Defendant Timothy Miller ("Mr. Miller") is the current or former Chief Executive Officer ("CEO") of Welsbach.  Upon information and belief, Miller resides in New York.

## JURISDICTION AND VENUE

5.     This court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mr. Tortorice has brought claims pursuant to the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621 *et seq.*, the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615, and the Americans with Disability Act ("ADA") 42 U.S.C. §§ 1201 *et seq*. The court may exercise supplemental jurisdiction over Mr. Tortorice's state and city law claims. 28 U.S.C. §1367.

6.     Venue is appropriate in the Eastern District of New York as Welsbach's and EMCOR's ("Welsbach" and "EMCOR" collectively the "Company") acts and omissions giving rise to the claims in this Complaint occurred in the Eastern District of New York.  Indeed, Mr. Tortorice worked for the Company and was fired by the Company within the Eastern District of New York. Additionally, Mr. Tortorice resides within the Eastern District of New York.

7.     This court has jurisdiction over the Defendant Welsbach because Welsbach purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Tortorice) in New York. Indeed, the Plaintiff was employed by Welsbach in the State of New York, was managed by Welsbach in the State of New York, and was terminated by Welsbach in the State of New York. Furthermore, Welsbach has registered with the State of New York as a foreign corporation doing business in the State of New York and its principal place of business is in New York.

8.     This court has jurisdiction over the Defendant EMCOR because EMCOR purposefully availed itself of New York law by operating a business in New York, transacting

business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Tortorice) in New York. Indeed, the Plaintiff was employed by EMCOR in the State of New York, was managed by EMCOR in the State of New York, and was terminated by EMCOR in the State of New York. Furthermore, EMCOR has registered with the State of New York as a foreign corporation doing business in the State of New York.

9. This court has jurisdiction over the Defendant Mr. Miller because Mr. Miller purposefully availed himself of New York law by managing a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Tortorice) in New York.  Mr. Miller also supervised Mr. Tortorice in New York, fired Mr. Tortorice in New York, and primarily worked in New York during all relevant times. Additionally, upon information and belief, Miller is a resident of New York.

## STATEMENT OF FACTS

10. Mr. Tortorice is in his 60's in terms of age and was born in November 1960.

11. In or around March 19, 2018, Mr. Tortorice began employment as a Vice President and Chief Financial Officer ("CFO") with Welsbach Electric Corp. ("Welsbach") in College Point, Queens, NY, which at all relevant times was owned by EMCOR Group, Inc. ("EMCOR").

12. At all relevant times, both Welsbach and EMCOR had authority to control the terms and conditions of Mr. Tortorice's employment, including by making hiring, promotion, and firing decisions regarding his employment.

13. Indeed, Mr. Tortorice directly reported both to Welsbach's Chief Executive Officer ("CEO") and to EMCOR's Construction CFO.

14. Both Welsbach and EMCOR maintained Mr. Tortorice's employment records.

15.     Both Welsbach and EMCOR controlled the rate and method of his pay.

16.     Accordingly, at all relevant times, Welsbach and EMCOR (both individually and collectively, the "Company") were both Mr. Tortorice's joint employers.

17.     At all relevant times, the Company (including both Welsbach and EMCOR individually) employed 20 or more employees during 20 or more calendar weeks during the relevant calendar years.

18.     Indeed, at all relevant times, the Company (including both Welsbach and EMCOR individually) employed 50 or more employees during 20 or more calendar weeks during the relevant preceding calendar year.

19.     Accordingly, at all relevant times, the Company (including both Welsbach and EMCOR individually) was an employer under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Family and Medical Leave Act ("FMLA"), the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL").

20.     At all relevant times, Mr. Tortorice's performance with the Company was satisfactory.

21.     Mr. Tortorice was hired, in whole or in part, by the then-CEO Ken Brouwer ("Mr. Brouwer").

22.     Additionally, Mr. Tortorice had extensive interviews at EMCOR, including with EMCOR's Construction CFO Ed Dobrowski ("Mr. Dobrowski") and Bob Wilson (a senior executive at EMCOR).

23.     Mr. Brouwer promised Mr. Tortorice that he would be paid an interim signing bonus upon completion of a company cost savings analysis.

24.     Mr. Tortorice submitted a completed and fully satisfactory cost savings analysis to Mr. Brouwer.  Mr. Tortorice thus earned the interim signing bonus promised to him.

25.     Mr. Brouwer and Mr. Wilson also promised Mr. Tortorice, as part of his offer letter, that he would be part of the executive bonus pool.

26.     Mr. Brouwer left the Company in or around 2018.

27.     Mr. Tortorice has been diagnosed with Type 2 Diabetes and chronic high blood pressure/hypertension.  Mr. Tortorice's Type 2 Diabetes and chronic high blood pressure/hypertension are physical impairments that substantially limit one or more of his major life activities, including, but not limited to, Mr. Tortorice's ability to maintain his energy levels, his ability to eat, and his ability to run and exercise.  Mr. Tortorice's Type 2 Diabetes and chronic high blood pressure are physical impairments that also substantially impair one or more of his major bodily functions, including but not limited to, Mr. Tortorice's cardiovascular and digestive systems.  As such, Mr. Tortorice was and still is disabled under the ADA, NYCHRL, and NYSHRL.

28.     At all relevant times, Mr. Tortorice could perform the essential job functions of his position, with or without reasonable accommodations.

29.     As such, Mr. Tortorice was a qualified disabled individual under the ADA, NYCHRL, and NYSHRL.

30.     Additionally, Mr. Torotorice's disabilities were also serious health conditions under the FMLA.

31.     Sometime after Mr. Tortorice started his employment, he disclosed his disabilities to the Company, including to Mr. Miller, the new CEO, and to Anaila Garvey ("Ms. Garvey"), the Assistant Vice President of Human Resources ("HR").

32.     Upon information and belief, Mr. Miller and Ms. Garvey are non-disabled, and Ms. Garvey is approximately 40 years old, which is much younger than the age of Mr. Tortorice.

33.     During his employment, Mr. Tortorice requested the reasonable accommodation of taking disability-related time off from work for medical appointments for management of his disabilities' symptoms.

34.     The Company seemingly approved Mr. Tortorice's reasonable accommodation requests.

35.     Because Mr. Tortorice had completed the requisite work required for his bonus, he was paid a bonus by the Company in or around December 2018.

36.     In or around 2019, Linda Lagnese ("Ms. Lagnese") replaced Ms. Garvey as Assistant Vice President of HR.

37.     Upon information and belief, Ms. Langnese is in her 40s and non-disabled.  Thus, Ms. Langnese is significantly younger than Mr. Tortorice.

38.     Both Ms. Langnese and Mr. Miller were aware of Mr. Tortorice's disabilities. Indeed, Mr. Tortorice wrote his doctor's appointments on the shared executive calendar.

39.     As of at least March 19, 2019, Mr. Tortorice had worked for the Company for 12 or more months in excess of 1250 hours.

40.     Accordingly, Mr. Tortorice was a qualified employee for FMLA leave.

41.     In or around 2019, during management sessions, Chief Operating Officer ("COO") Peter Ronzetti ("Mr. Ronzetti") and Mr. Miller would talk about which employees were old enough to retire and which younger employees could replace them.

42.     It was clear based on their tone, repeated emphasis on the subject, and the fact that many of these employees had never expressed any intention of retiring, that Mr. Ronzetti and Mr. Miller wanted to pressure or otherwise force these older employees to retire.

43.     Upon information and belief, Mr. Ronzetti is non-disabled.

44.     It seemed clear that older employees were not as valued as younger employees by top Company management, including based on the tone and manner in which Mr. Miller and Mr. Ronzetti spoke about older employees.

45.     During this time, Mr. Tortorice continued to use his reasonable accommodation of taking up to a few hours off every couple of months to attend doctor's appointments for his disabilities.

46.     As Mr. Tortorice was a qualified employee for FMLA leave and these appointments were for serious health conditions of his, these appointments were also intermittent FMLA leave.

47.     Mr. Tortorice notified the Defendants about his need for intermittent FMLA leave.

48.     On at least one occasion, Mr. Miller confronted Mr. Tortorice for being out for a doctor's appointment because Mr. Tortorice was unable to attend a meeting, even though Mr. Miller knew Mr. Tortorice was at a disability-related doctor's appointment.

49.      In doing so, Mr. Miller retroactively denied a reasonable accommodation for Mr. Tortorice's disabilities and implied that Mr. Tortorice would face negative repercussions if he continued to take time off related to his disability.

50.     This also constituted FMLA retaliation.

51.     Mr. Tortorice raised protected concerns about being confronted for attending doctor's appointments related to his disabilities and pressured not to do so in the future, reiterating to Mr. Miller (as Mr. Miller already knew) that he was at a doctor's appointment due to his disabilities at the time of the meeting and should thus not be reprimanded for missing it.

52.     In or around March 2020, the Company was experiencing decreased business.

53.     During a management call, Tony Guzzi ("Mr. Guzzi"), the CEO of EMCOR, strongly encouraged senior management to use COVID as an opportunity to get rid of employees who were previously "untouchable."

54.     Based on this and other comments by Mr. Guzzi and other executives, it was clear that the Company was aiming to get rid of employees who it didn't want as part of its long-term future, including because they were older or had disabilities.

55.     Indeed, during approximately this same time period, Mr. Miller unfairly criticized Senior Payroll Manager Sheri Lee Schreiber ("Ms. Schreiber"), who was approximately 60 years old.

56.     Notably, Ms. Schreiber was a strong performer, was experienced, and had worked for the Company for many years. The criticism appeared totally unjustified and appeared to be motivated by a desire to push out Ms. Schreiber due to her age.

57.     Mr. Miller told Mr. Tortorice that Assistant Payroll Clerk Lillian Rosa ("Ms. Rosa"), who was younger, could replace Ms. Schreiber, and that another younger employee, Assistant Controller Mustafa Shinwa ("Mr. Shinwa"), could support Ms. Rosa.

58.     Upon information and belief, Ms. Rosa and Mr. Shinwa are in their 20s and are non-disabled.

59.     Notably, the younger Ms. Rosa was less experienced, less senior, and less qualified for the role than the older Ms. Schreiber.

60.     Mr. Tortorice conveyed concerns to Mr. Miller that Ms. Schreiber, an older employee with valuable knowledgeable and experience, seemed to have been unfairly targeted for negative treatment, and Mr. Tortorice made clear that he didn't think the Company should fire her.

61.     Mr. Miller told Mr. Tortorice that the Company had to fire one of them (either Ms. Rosa or Ms. Schreiber), but also made clear that he wanted Mr. Tortorice to fire the older Ms. Schreiber.

62.     Mr. Tortorice expressed to Mr. Miller that firing Ms. Schreiber seemed to be age discrimination, given her qualifications, greater seniority than Ms. Rosa, and satisfactory work performance.

63.     Mr. Miller refused to respond to Mr. Tortorice's concerns and reiterated that Mr. Schreiber should be fired.

64.     Mr. Ronzetti also questioned why the Company was keeping Eddie Morales ("Mr. Morales"), a 63 year old accounts receivable manager.

65.     Notably, Mr. Morales was a high performing employee who more than paid for himself with his strong performance.  Accordingly, it was clear that Mr. Ronzetti was focusing on Mr. Morales because of his age.

66.     Through Mr. Tortorice's intervention he was able to save Mr. Morales's employment.

67.     In or around March 2020, Mr. Miller, Mr. Ronzetti, and Mr. Tortorice discussed other employees the Company could terminate as part of cost-saving measures.

68.     Mr. Miller strangely focused on Accounts Payable Clerk Erica Delagado ("Ms. Delagado"), who was pregnant and currently was out on FMLA leave. Mr. Miller and Mr. Ronzetti both knew that Ms. Delagado was pregnant and out on an FMLA leave.

69.     Mr. Miller and Mr. Ronzetti made comments asking facetiously why Ms. Delagado was still employed.  Their comments and tone made clear that they believed Ms. Delagado, as a pregnant employee out on leave, should have been fired sooner by Mr. Tortorice.

70.     Mr. Tortorice conveyed protected concerns related to the improper targeting of Ms. Delagado, seemingly due to her pregnancy and protected leave, and likewise pointed out that she was a strong performer and that there was work for her to do when she returned.

71.      Mr. Tortorice also mentioned that, since Ms. Delagado was on FMLA leave, it was not appropriate to select her (a pregnant employee on leave) for termination, particularly when her employment was not costing the Company much and was not otherwise justified.

72.     Mr. Miller and Mr. Ronzetti grew angry at Mr. Tortorice for mentioning that Ms. Delagado was in a protected class and on a protected leave.

73.     Mr. Miller told Mr. Tortorice that Mr. Tortorice needed to terminate Ms. Delagado as part of a wider layoff, and reiterated his order that, because of the COVID pandemic, the rules didn't apply as they used to.

74.     It was clear that Mr. Miller and Mr. Ronzetti wanted to use the COVID pandemic as an excuse to lay off employees in protected classes and who were on protected leaves (including pursuant to the ADA or FMLA).

75.     Mr. Tortorice raised protected concerns that targeting Ms. Delagado was discriminatory, given that her performance was satisfactory, that there were less qualified employees available to layoff, because her pregnancy and leave status appeared to be held

against her, and because there was available work to keep her busy upon her return from FMLA leave, but Mr. Miller and Mr. Ronzetti ignored Mr. Tortorice.

76.     Around this same time, Mr. Tortorice received his 2019 end of year bonus.  It was less than what Mr. Tortorice had received for his 2018 end of year bonus.

77.     Notably, despite promises in his offer level to be part of the executive bonus pool Mr. Tortorice was excluded from the 2019 executive bonus pool.

78.      This clearly was done for discriminatory reasons and/or in retaliation for Mr. Tortorice raising protected concerns.

79.     Further, younger executives and/or executives who had not raised protected concerns received higher bonuses as a percentage of salary.

80.     Mr. Tortorice developed other successful cost-saving measures, including changing the Company's phone systems, changing the printer/copier machine leases, and revising contracts the Company already had in place.

81.     In or around this time, Mr. Miller and Mr. Ronzetti asked Mr. Tortorice about Accounts Payable Clerk, Cecelia Mellon ("Ms. Mellon"), who was an older employee in her 70s.

82.     Mr. Tortorice told Mr. Miller that Ms. Mellon was a good performer and had been at the Company for a significant amount of time.

83.     Mr. Miller told Mr. Tortorice that Ms. Mellon would be gone soon anyway, meaning that she was close to retirement due to her age, and stated that he therefore wanted Mr. Tortorice to terminate her (Ms. Mellon) and replace her with Kathy Torres ("Ms. Torres"), Mr. Miller's own Administrative Assistant who was less qualified than Ms. Mellon.

84.     Upon information and belief, Ms. Torres is in her 40s and non-disabled.

85.     Mr. Tortorice conveyed protected concerns that this termination appeared motivated by age discrimination.  Indeed, Ms. Mellon did not intend on retiring anytime soon.

86.     Mr. Tortorice conveyed that there were other, younger, less experienced, and lower performing employees who could be let go instead of the older Ms. Mellon.

87.     Mr. Miller told Mr. Tortorice that Ms. Mellon could and should be terminated.

88.     Through Mr. Tortorice's intervention, Ms. Mellon's employment was saved.

89.     Mr. Tortorice noticed that management seemed to be targeting older employees and employees in other protected classes for the layoffs.

90.      It did not seem that performance was a significant consideration because many of the older employees being laid off were strong performers and more experienced than the similarly situated younger employees who were not being laid off and who were replacing the laid off older employees and/or taking over their job functions.

91.      Likewise, employees in other protected classes being laid off also were strong performers and more qualified than many of the individuals outside of their protected classes who were not being laid off and who were replacing them.

92.     Mr. Tortorice also observed that employees who had taken an FMLA leave, whether because of their own condition or to care for a family member, were also being let go either during their leave or shortly after returning.

93.     For example, Cynthia Rodriguez ("Ms. Rodriguez"), an older woman in her 50's, took FMLA time to care for her ailing mother and seemingly as a result was terminated and replaced by a woman in her 20's.

94.     Additionally, during the summer of 2020, Mr. Tortorice learned that EMCOR's CFO, Ed Dobrowski ("Mr. Dobrowski"), was retiring.

95.     As Mr. Tortorice reported directly to Mr. Dobrowski (who was one of his two direct managers) he called him to congratulate him on his retirement.  During this call Mr. Dobrowski shockingly stated that he had not intended to retire but was instead pushed out due to his age.

96.     Indeed, Mr. Dobrowski was ultimately replaced by a much less experienced individual in his 30's, Joe Corris ("Mr. Corris").

97.     Additionally, during approximately this time period, Mr. Tortorice became aware that the Company was overcharging the state of New York for some work it did on the Tappan Zee Bridge.

98.     Specifically, the Company had originally quoted the state the cost of material and labor to install metal pipes.  It later became clear that the metal pipes were not feasible, so PVC pipes were installed instead.

99.     Notably the PVC pipes were significantly cheaper and easier to install (requiring much less labor to put in).

100.    While the Company did credit back to the state the differential in price between the metal pipes and the PVC, the Company never credited back the significantly reduced labor costs involved in installing the PVC.

101.    Mr. Tortorice discussed the overcharge with Mr. Miller who was dismissive of Mr. Tortorice's concerns that they should credit back the labor saving.  This dismissiveness seemed to be motivated by Mr. Tortorice's age, disability status, and/or the fact he had previously raised protected concerns about other unlawful acts taken by the Company.

102.     As part of this conversation, Mr. Miller instructed Mr. Tortorice not to correct the error by reopening the account and crediting back the labor cost savings (as required to under the contract).

103.     In or around this time, Mr. Tortorice noticed that he was being excluded from meetings that management employees who were younger, non-disabled, and/or who had not raised protected concerns were not excluded from.

104.     On or around August 24, 2020, Mr. Miller and Ms. Langnese met with Mr. Tortorice.

105.     Mr. Miller alleged that Mr. Tortorice had not completed certain assignments in his offer letter, which had been required for Mr. Tortorice's 2018 signing bonus (which he received because he had in fact completed the assignments he was tasked at the time of his hiring).

106.     When Mr. Tortorice explained to Mr. Miller he had indeed completed the assigned tasks, Mr. Miller did not have a meaningful response.

107.     Furthermore, Mr. Miller specifically mentioned that, and expressed annoyance because, he had to push Mr. Tortorice to "fire Sherri [Schreiber] and that pregnant girl."

108.     Notably, Mr. Tortorice did not oppose cost saving measures and in fact had implemented multiple cost saving measures.

109.     Instead, Mr. Tortorice had simply raised protected concerns about targeting members of protected classes for layoffs and terminations rather than other less qualified individuals who should have been laid off instead.

110.     Indeed, during this conversation, Mr. Miller made clear that he was angry that Mr. Tortorice had raised protected concerns, including concerns that top management was

improperly targeting employees because of characteristics that were protected under city, state, and federal laws.

111.   Notably, Mr. Tortorice had raised concerns to Mr. Miller and Mr. Ronzetti that employees in protected classes were being targeted for layoffs because of these statuses and that these employees were thus being treated worse than other similarly situated less qualified employees who the Company was unwilling to lay off instead.

112.   It was apparent that Mr. Miller was retaliating against Mr. Tortorice for raising protected concerns, including related to improper discriminatory targeting of himself and others by top Company management.

113.   Notably, Mr. Miller had not previously accused Mr. Tortorice of performance issues, and thus had not given him an opportunity to improve if there were alleged performance issues.

114.   Indeed, prior to this, Mr. Miller had given Mr. Tortorice positive feedback related to his employment and performance.

115.   Further, at the time Mr. Tortorice was terminated, the Company projections showed that further headcount reductions were potentially harmful and that there were better cost saving mechanisms for the Company's overall health.

116.   Indeed, Mr. Tortorice was not terminated as a result of Company wide layoffs.

117.   As such, Mr. Tortorice was involuntarily terminated on August 24, 2020.

118.   Upon information and belief, Mr. Tortorice was replaced by a younger, less qualified, and non-disabled employee (Steven Filippazzo).

119.    Mr. Tortorice's termination took place in New York City (Queens), and, upon information and belief, Mr. Miller was in New York City (within the state of New York) when he made the decision to fire Mr. Tortorice, as well as when he actually terminated Mr. Tortorice.

120.    On January 20, 2021, Mr. Tortorice timely filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

121.    On September 9, 2022, Mr. Tortorice requested a dismissal for administrative closure from the NYCCHR.

122.    The NYCCHR issued an administrative closure on September 13, 2022.

123.    On October 13, 2022, the EEOC issued Mr. Tortorice a Right to Sue letter.

124.    This lawsuit is timely filed.

## COUNT I

**(Age Discrimination in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Welsbach, EMCOR, and Mr. Miller)**

125.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

126.    The Company (including each of Welsbach and EMCOR) is an employer under the definition of Title 8 of The Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it employed four or more persons.

127.    At all relevant times, Mr. Tortorice was over 40 years old.

128.     The Defendants, by and through its agents harassed and discriminated against Mr. Tortorice with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Tortorice's age and/or because Mr. Tortorice was an older disabled individual ("age plus" discrimination).

129.     More specifically, the Defendants subjected Mr. Tortorice to adverse actions because of his age, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his younger colleagues, and/or terminating Mr. Tortorice's employment.

130.     Upon information and belief, the Defendants replaced Mr. Tortorice with a lesser or similarly qualified, younger employee.

131.     Mr. Miller discharged, expelled, barred, and/or discriminated against Mr. Tortorice in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Tortorice under the NYCHRL.

132.     Mr. Miller aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

133.     Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

134.     As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

135.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT II

### (Age Discrimination in Violation of New York State Human Rights Law, Executive Article 15, Section 296)

### Plaintiff v. All Defendants (Welsbach, EMCOR, and Mr. Miller)

136.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

137.    The Company (including each of Welsbach and EMCOR) was an employer as defined by state anti-discrimination laws, including the NYSHRL.

138.    At all relevant times, Mr. Tortorice was over 40 years old.

139.    The Defendants, by and through its agents harassed and discriminated against Mr. Tortorice with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Tortorice's age and/or because Mr. Tortorice was an older disabled individual ("age plus" discrimination).

140.    More specifically, the Defendants subjected Mr. Tortorice to adverse actions because of his age, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his younger colleagues, and/or terminating Mr. Tortorice's employment.

141.    Upon information and belief, the Defendants replaced Mr. Tortorice with a lesser or similarly qualified, younger employee.

142.    Mr. Miller discharged, expelled, barred, and/or discriminated against Mr. Tortorice in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Tortorice under the NYSHRL.

143.    Mr. Miller aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

144.    Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

145.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

146.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT III

**(Age Discrimination in Violation of the Age Discrimination in Employment Act)**
**Plaintiff v. The Company (Welsbach and EMCOR)**

147.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

148.    During all relevant times, the Company (including each of Welsbach and EMCOR) was an employer under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (hereinafter, "ADEA") because the Company employed 20 or more individuals for 20 or more calendar weeks during the relevant calendar years.

149.    The Company, by and through its agents harassed and discriminated against Mr. Tortorice with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Tortorice's age and/or because Mr. Tortorice was an older disabled individual ("age plus" discrimination).

150.    More specifically, the Company subjected Mr. Tortorice to adverse actions because of his age, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his younger colleagues, and/or terminating Mr. Tortorice's employment.

151.    Upon information and belief, the Company replaced Mr. Tortorice with a lesser or similarly qualified, younger employee.

152. The Company acted with willful and/or knowing indifference to the federally protected rights of Mr. Tortorice.

153. As a direct and proximate result of the Company's violations of the ADEA, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

154. Mr. Tortorice seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT IV

**(Disability Discrimination and Failure to Accommodate in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York) Plaintiff v. All Defendants (Welsbach, EMCOR, and Mr. Miller)**

155. Mr. Tortorice incorporates all paragraphs above and below as if set forth fully herein.

156. The Company (including each of Welsbach and EMCOR) is an employer under the definition of Title 8 of The Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it employed four or more persons.

157. Mr. Tortorice suffers (and at all relevant times suffered) from disabilities, including, Type 2 Diabetes and hypertension. Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of his major life activities,

including his ability to maintain energy levels, eat, and exercise.  They further substantially impair his cardiovascular and digestive systems.  Accordingly, Mr. Tortorice is (and at all relevant times was) disabled under the NYCHRL.

158.    At all relevant times, Mr. Tortorice was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

159.    Mr. Tortorice disclosed his disabilities to Defendants; and/or the Defendants were aware of Mr. Tortorice's disabilities; and/or the Defendants regarded Mr. Tortorice as disabled.

160.    Mr. Tortorice requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, time off from work for medical appointments.

161.    The disability-related accommodations requested by Mr. Tortorice did not pose an undue burden on Defendants.

162.    The Defendants failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

163.    The Defendants unlawfully denied one or more of Mr. Tortorice's disability-related accommodation requests, including but not limited to, his requests for time off from work for disability related appointments.

164.    Defendants discriminated against Mr. Tortorice due to his disabilities by subjecting Mr. Tortorice to adverse actions, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from

the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his colleagues, and/or terminating Mr. Tortorice's employment.

165.    Non-disabled employees of the Company were treated more favorably than Mr. Tortorice including through not being improperly harassed, not subjected to a hostile work environment, having their employment offer promises honored, being given a higher bonus as a percentage of salary, and/or by not having their employment terminated.

166.    Upon information and belief, the Company replaced Mr. Tortorice with a lesser or similarly qualified, non-disabled employee.

167.    Mr. Miller discharged, expelled, barred, and/or discriminated against Mr. Tortorice in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Tortorice under the NYCHRL.

168.    Mr. Miller aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

169.    Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

170.    As a direct and proximate result of the Defendants' violations of the NYCHRL, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

171.    Mr. Tortorice seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced

earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorneys' fees, and costs.

### COUNT V

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Welsbach, EMCOR, and Mr. Miller)**

172.     Mr. Tortorice incorporates all paragraphs above and below as if set forth fully herein.

173.     At all relevant times, the Company (including each of Welsbach and EMCOR) employed four or more persons.

174.     The Company (including each of Welsbach and EMCOR) is an employer under the definition of Executive Law Article 15 ("NYSHRL").

175.     Mr. Tortorice suffers (and at all relevant times suffered) from disabilities, including, Type 2 Diabetes and high blood pressure.  Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of his major life activities, including his ability to maintain energy levels, eat, and exercise.  They further substantially impair his cardiovascular and digestive systems.  Accordingly, Mr. Tortorice is (and at all relevant times was) disabled under the NYSHRL.

176.     At all relevant times, Mr. Tortorice was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

177.   Mr. Tortorice disclosed his disabilities to Defendants; and/or the Defendants were aware of Mr. Tortorice's disabilities; and/or the Defendants regarded Mr. Tortorice as disabled.

178.   Mr. Tortorice requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, time off from work for medical appointments.

179.   The disability-related accommodations requested by Mr. Tortorice did not pose an undue burden on Defendants.

180.   The Defendants failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

181.   The Defendants unlawfully denied one or more of Mr. Tortorice's disability-related accommodation requests, including but not limited to, his requests for time off from work for disability related appointments.

182.   Defendants discriminated against Mr. Tortorice due to his disabilities by subjecting Mr. Tortorice to adverse actions, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his colleagues, and/or terminating Mr. Tortorice's employment.

183.   Non-disabled employees of the Company were treated more favorably than Mr. Tortorice including through not being improperly harassed, not subjected to a hostile work environment, having their employment offer promises honored, being given a higher bonus as a percentage of salary, and/or by not having their employment terminated.

184.    Upon information and belief, the Company replaced Mr. Tortorice with a lesser or similarly qualified, non-disabled employee.

185.    Mr. Miller discharged, expelled, barred, and/or discriminated against Mr. Tortorice in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Tortorice under the NYSHRL.

186.    Mr. Miller aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL

187.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Tortorice and/or conduct so reckless to amount to such disregard.

188.    As a direct and proximate result of the Defendants' violations of the NYSHRL, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

189.    Mr. Tortorice seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

**COUNT VI**

**(Disability Discrimination and Failure to Accommodate in Violation of the**

**Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. The Company (Welsbach and EMCOR)**

190.     Mr. Tortorice incorporates all paragraphs above and below as if set forth fully

herein.

191.     During all relevant times, The Company (including each of Welsbach and

EMCOR) was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et.

seq. (hereinafter the "ADA"), because it employed more than 15 persons for 20 or more calendar

weeks within the previous 12-month period.

192.     Mr. Tortorice suffers (and at all relevant times suffered) from disabilities,

including, Type 2 Diabetes and high blood pressure.  Each of these disabilities, both individually

and collectively, are impairments that substantially limit one or more of his major life activities,

including his ability to maintain energy levels, eat, and exercise.  They further substantially

impair his cardiovascular and digestive systems.  Accordingly, Mr. Tortorice is (and at all

relevant times was) disabled under the ADA.

193.     At all relevant times, Mr. Tortorice was a qualified employee and was capable of

performing the essential functions of his job with or without one or more reasonable

accommodations.

194.     Mr. Tortorice disclosed his disabilities to Defendants; and/or the Defendants were

aware of Mr. Tortorice's disabilities; and/or the Defendants regarded Mr. Tortorice as disabled.

195.     Mr. Tortorice requested and/or utilized disability-related reasonable

accommodations that would have assisted him in performing the essential functions of his job.

These requested reasonable accommodations included, but were not limited to, time off from work for medical appointments.

196.    The disability-related accommodations requested by Mr. Tortorice did not pose an undue burden on Defendants.

197.    The Defendants failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

198.    The Defendants unlawfully denied one or more of Mr. Tortorice's disability-related accommodation requests, including but not limited to, his requests for time off from work for disability related appointments.

199.    Defendants discriminated against Mr. Tortorice due to his disabilities by subjecting Mr. Tortorice to adverse actions, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his colleagues, and/or terminating Mr. Tortorice's employment.

200.    Non-disabled employees of the Company were treated more favorably than Mr. Tortorice including through not being improperly harassed, not subjected to a hostile work environment, having their employment offer promises honored, being given a higher bonus, and/or by not having their employment terminated.

201.    Upon information and belief, the Company replaced Mr. Tortorice with a lesser or similarly qualified, non-disabled employee.

202.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Tortorice.

203.     As a direct and proximate result of the Company's violation of the ADA, Mr.

Tortorice has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering,

loss of enjoyment of life, and emotional damages.

204.     Mr. Tortorice seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages,

interest, attorneys' fees, and costs.

## COUNT VII

**(Retaliation for Engaging in Protected Activity in Violation of the New York City Human**

**Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Welsbach, EMCOR, and Mr. Miller)**

205.     The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

206.     Mr. Tortorice engaged in protected activity under the NYCHRL, including, but

not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected

activity regarding a hostile work environment based on age and/or disability;  (ii) opposing,

expressing protected concerns, and/or engaging in other protected activity related to the

harassing and discriminatory actions taken by the Company due to Mr. Tortorice's age and

disability status; and/or (iii) opposing, expressing protected concerns, and/or engaging in other

protected activity related to discriminatory actions proposed or taken by the Company against

other employees based on the protected statuses of those employees, including but not limited to, age, sex, pregnancy status, and disability status.

207.    Mr. Tortorice additionally engaged in protected activity under the NYCHRL by, (i) requesting and/or utilizing disability-related reasonable accommodations, (ii) protesting the failure to provide (and/or reprimands for utilizing) disability-related reasonable accommodations, and (iii) raising disability-related discrimination concerns.

208.    Defendants discriminated against and/or retaliated against Mr. Tortorice for engaging in activity protected under the NYCHRL, by subjecting Mr. Tortorice to adverse actions, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his colleagues, and/or terminating Mr. Tortorice's employment.

209.    Mr. Miller discharged, expelled, barred, and/or discriminated against Mr. Tortorice in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Tortorice under the NYCHRL.

210.    Mr. Miller aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

211.    Defendants' have engaged in retaliation with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

212.    As a direct and proximate result of the Defendants' violations of the NYCHRL, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

213.    Mr. Tortorice seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorneys' fees, and cost.

## COUNT VIII

**(Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (Welsbach, EMCOR, and Mr. Miller)**

214.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

215.    Mr. Tortorice engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or disability;  (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Tortorice's age and disability status and the age; and/or (iii) opposing, expressing protected concerns, and/or engaging in other protected activity related to discriminatory actions proposed or taken by the Company against other employees based on the protected statuses of those employees, including but not limited to, age, sex, pregnancy status, and disability status.

216.    Mr. Tortorice additionally engaged in protected activity under the NYSHRL by, (i) requesting and/or utilizing disability-related reasonable accommodations, (ii) protesting the failure to provide (and/or reprimands for utilizing) disability-related reasonable accommodations, and (iii) raising disability-related discrimination concerns

217.    Defendants discriminated against and/or retaliated against Mr. Tortorice for engaging in activity protected under the NYSHRL, by subjecting Mr. Tortorice to adverse actions, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his colleagues, and/or terminating Mr. Tortorice's employment.

218.    Mr. Miller discharged, expelled, barred, and/or discriminated against Mr. Tortorice in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Tortorice under the NYSHRL.

219.    Mr. Miller aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

220.    Defendants' have engaged in retaliation with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

221.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

222.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IX

### (Retaliation in Violation of the Age Discrimination in Employment Act)

### Plaintiff v. The Company (Welsbach and EMCOR)

223.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

224.    Mr. Tortorice engaged in protected activity under the ADEA, including, but not limited to: (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age (of both himself and others) and/or (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due the age of employees, including raising protected concerns about employees being subjected to disparate treatment due to age (including treatment of both himself and others) that was worse than, and inconsistent with, the treatment of younger employees at the Company, as well as concerns about employees (including himself and others) being subjected to a harassing and otherwise hostile work environment.

225.    The Company retaliated against Mr. Tortorice for opposing, expressing protected concerns, and/or engaging in other protected activity related to one or more practices made

unlawful by the ADEA, by subjecting Mr. Tortorice to adverse actions, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his colleagues, and/or terminating Mr. Tortorice's employment.

226.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Tortorice's exercising of, or enjoyment of, one or more rights granted by the ADEA.

227.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Tortorice.

228.    As a direct and proximate result of the Company's violations of the ADEA, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

229.    Mr. Tortorice seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

**COUNT X**

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**
**Plaintiff v. The Company (Welsbach and EMCOR)**

230.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

231.    Mr. Tortorice engaged in protected activity under the ADA, including, but not limited to, limited to: (i) opposing, expressing protected concerns, and/or engaging in other

protected activity regarding a hostile work environment based on disability (of both himself and others) and/or (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due the disability of employees, including raising protected concerns about employees being subjected to disparate treatment due to age (including treatment of both himself and others) that was worse than, and inconsistent with, the treatment of non-disabled employees at the Company, as well as concerns about employees (including himself and others) being subjected to a harassing and otherwise hostile work environment by raising protected concerns related to disability-related harassment and discrimination (of himself and others); and/or by requesting and utilizing disability-related accommodations.

232.    The Company discriminated against and/or retaliated against Mr. Tortorice for engaging in activities protected under the ADA, by subjecting Mr. Tortorice to adverse actions, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his colleagues, and/or terminating Mr. Tortorice's employment.

233.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Tortorice's exercising of, or enjoyment of, one or more rights granted by the ADA.

234.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Tortorice.

235.    As a direct and proximate result of the Company's violation of the ADA, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

236.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

237.    As a direct and proximate result of the Defendant's violations of the ADEA, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

238.    Mr. Tortorice seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.

## COUNT XI

### (Retaliation in Violation of the Family and Medical Leave

### Act – 29 U.S.C. §2615)

### Mr. Tortorice v. All Defendants (Welsbach, EMCOR, and Mr. Miller)

239.    Mr. Tortorice incorporates all paragraphs above and below as if set forth fully herein.

240.   During all relevant times, the Company was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

241.   As such, at all relevant times, the Company was an employer under the FMLA.

242.   At all relevant times, the Company employed 50 or more employees within 75 miles of Mr. Tortorice's worksite.

243.   At all relevant times (from March 19, 2019 onward), Mr. Tortorice had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

244.   As such, from March 19, 2019 onward, Mr. Tortorice was an eligible employee under the FMLA.

245.   Mr. Tortorice suffered from one or more serious health conditions, including, but not limited to, his diabetes and hypertension.

246.   Mr. Tortorice was entitled to FMLA leave.

247.   Mr. Tortorice sought to exercise his rights under the FMLA, including by requesting and utilizing one or more protected leaves under the FMLA.

248.   Specifically, Mr. Tortorice sought to exercise intermittent leave in the form of taking time off to attend doctor's appointments.

249.   Mr. Tortorice opposed one or more practices made unlawful under the FMLA, including, the firing of an employee while she was on FMLA leave for taking FMLA leave.

250.   Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Tortorice by subjecting Mr. Tortorice to adverse actions, including, but not limited to, subjecting Mr. Tortorice to a harassing and otherwise hostile work environment, excluding

Mr. Tortorice from the executive bonus pool, providing Mr. Tortorice a lower bonus as a percentage of salary than his colleagues, and/or terminating Mr. Tortorice's employment.

251.   Mr. Miller was an employer under the FMLA because he had the power to hire and/or fire Mr. Tortorice, supervised and controlled Mr. Tortorice's conditions of employment including his work schedule, played a role in determining Mr. Tortorice's rate and method of payment, and/or played a role in maintaining Mr. Tortorice's employment records.

252.   Defendants' actions, including their retaliation in violation of the FMLA, were willful and undertaken in bad faith.

253.   As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Tortorice has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

254.   Mr. Tortorice seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

WHEREFORE, the plaintiff, Paul Tortorice, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff his reasonable attorney's fees;

J.  Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which he is entitled; and

L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

PAUL TORTORICE

By his attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:  10/19/2022                                 By:      */s/Timothy Brock*_____

Benjamin J. Wyatt (#5604590)
BWyatt@Wyattlegalservices.com

Timothy Brock (#5614151)
Tbrock@wyattlegalservices.com

Main Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
418 Broadway, 2nd Floor
Albany, NY 12207